**UNITED STATES of America**

v.

**Lawrence LIPOWITZ, Robert William Muller, Richard Smith.**
**Richard Smith, Appellant.**

**No. 17183.**

United States Court of Appeals
Third Circuit.

Argued Sept. 26, 1968.

Decided Feb. 20, 1969.

Certiorari Denied June 9, 1969.
See 89 S.Ct. 2026

---

Jack B. Kirsten, Kirsten & Solomon, Newark, N. J., for appellant.

Kenneth P. Zauber, Chief, Civil Division, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

Smith appeals from judgments of conviction on a three count indictment charging violations of federal bank robbery statutes, 18 U.S.C. § 2113(a), (b) and (d). Smith, Lipowitz and Muller were charged with robbery of the Ivy Hill office of the United States Savings Bank at Newark, New Jersey on March 28, 1967, and were tried together. The Bank was insured by the Federal Deposit Insurance Corporation. Smith has alleged abridgement of his constitutional rights by the admission into evidence of "bait bills" seized in a search of an automobile in which he was riding in Cahokia, Illinois, by the means employed to identify him as one of the robbers and by the refusal of the court below to grant him a severance.

Shortly after the robbery, Smith being vehemently suspected, Bileaud and Weaver, FBI agents, saw Smith and Mrs. Smith in an automobile parked before Smith's house. Bileaud checked the registration, found the automobile was registered in Mrs. Smith's name, summoned two other FBI agents to his aid and went back to the house. The car had disappeared but the agents found it in front of a filling station. Mrs. Smith was in the driver's seat and Smith was seated beside her. Smith was immediately arrested on a valid federal warrant issued on the charge of robbing the Bank. He was searched and in his billfold were found three twenty-dollar "bait bills" taken from the Bank at the time of the robbery. The automobile was searched and a brown paper bag containing forty-four two-dollar bills was found. Davenport, a teller at the bank, testified that he had one hundred two-dollar bills in his drawer prior to the robbery and that they were missing from his drawer immediately after the robbery.

■ 1. *Search of the Automobile.*[1]

Smith argues that the FBI had ample time to obtain a search warrant for the automobile and that therefore the search was illegal. The automobile was registered in the name of Mrs. Smith. Smith did not assert that he owned the car at the trial and of course did not allege any "substantial interest in the money taken from it." Smith's position is that though he did not own the car or have any control over it,[2] irrespective of ownership or control, he has the standing to suppress the evidence. Cf. Jones v. United States, 362 U.S. 257, 260–267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). But the circumstances were exceptional. Mrs. Smith legally could have driven off with the car immediately following her husband's arrest and such a course could have deprived the United States of substantial evidence of Smith's guilt. Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 32 (3 Cir. 1965). Similar situations traditionally have justified a search without a warrant.[3, 4] We hold that the court committed no error in allowing the bills to be put in evidence with testimony relating to their seizure.

---

1. No issue is raised as to the legality of the agents' search of Smith. Under the admitted circumstances such an issue would be frivolous.

2. At a hearing to suppress the evidence relating to the bait bills counsel for Smith argued that he did not own the automobile and had no control over it.

3. See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949);

Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

4. The issue of control under the present law seems to us to be not too important under the circumstances of the instant case. See Gorman v. United States, 380 F.2d 158, 162 (1 Cir., 1967).

**2.** *Identification.* Smith contends that he must be granted a new trial because identification evidence secured by an alleged improper confrontation was admitted against him. While he concedes that he is not entitled to the protection of counsel to be accorded a defendant under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967),[5] nonetheless he relies upon Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which requires exclusion of evidence obtained from a confrontation "so unnecessarily suggestive and conducive to irreparable mistaken identity" as to constitute a denial of due process. Both Davenport and Mogul, another teller at the Bank, identified Smith at trial. Mogul and Davenport had attended Smith's arraignment and were asked at that time, May 19, 1967, if they could identify Smith. Crowley stated that both tellers identified Smith as one of the robbers. Davenport testified that following the robbery he had been asked to make identifications if possible from a random selection of photographs and that he identified Smith as one of the robbers. Davenport stated, "They ['the authorities'] showed me a few pictures and I didn't recognize any of them except for this one [Smith's]." Mogul stated that she had come to the United States Courthouse to identify an individual suspected of being one of the robbers whom she had described to the FBI immediately after the robbery. It is not disputed that proceedings other than Smith's arraignment were taking place while Mogul and Davenport were in the courtroom.

Both Mogul and Davenport testified they could identify Smith despite the stocking covering his face at the time of the robbery. Bringing two possible identifying witnesses into a courtroom at an accused's arraignment is not a desirable way of making an identification and a line-up would have been preferable but we must view the "totality" of the circumstances. We conclude that there was no denial of due process. When we refer to the "totality" of the evidence we refer to all the evidence presented on the issue of identification. Certainly we may not say that the admission of the identification evidence in the instant case was in derogation of the rule of Chapman v. California, 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[6]

**3.** *Denial of Severance.* A motion for severance on behalf of Smith was made prior to the trial and other substantially similar motions were made during the trial.[7] Rule 14, Fed.R.Crim. Proc., 18 U.S.C. All the motions were denied. Ordinarily the disposition of motions for severance are within the sound discretion of a trial court but a trial court's ruling in respect to severance, adverse to a defendant, will justify reversal when discretion is abused. Smith asserts that the trial court committed error, no one of the three defendants having taken the witness stand, in charging in respect to this issue: "No one of the defendants in this case took the stand to testify. I instruct you that

---

5. It was held in Stovall v. Denno, 388 U.S. at 296–301, 87 S.Ct. 1926, that *Wade* would not be given retroactive application and would apply only to confrontations after the date of the decision in *Wade, viz.,* June 12, 1967. The confrontations for purposes of identification in the instant case took place on May 19, 1967.

6. An almost identical identification issue arising out of the same robbery was before this court upon the same record in United States v. Lipowitz, Muller and Smith, 401 F.2d 591 (3 Cir. 1968) at our No. 17075. The circumstances of the identification of Muller were not substantially different from the circumstances accompanying the identification of Smith. We have considered the issue anew however in this opinion since a determination as to Muller cannot bind Smith.

7. It appears that the motions made at trial were oral.

the law does not compel a defendant to take the stand and testify, and no inference of any kind whatsoever may be drawn from the failure of a defendant to testify, and the fact that a defendant in this case did not take the stand and testify is not to enter into your deliberations in any manner at all." [8]

A brief history of the proceedings prior to the giving of the charge quoted above is necessary. Smith made no written request respecting a charge as to his failure to take the witness stand in his own behalf. Muller, one of Smith's codefendants in his request No. 10, asked that the court charge that "The defendant, Robert William Muller, in this case did not testify. You are to draw no inference from this either for or against the defendant. The defendant has a constitutional right to remain silent. The government is compelled to establish guilt by evidence independently and freely secured. Malloy v. Hogan, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653] (1964)." Lipowitz submitted no request for charge [9] and pleaded guilty to Count I of the indictment just prior to the time when the requests for charge were first discussed by the counsel for the defendants and the court. [10] The issue of Lip-

owitz's guilt or innocence, however, was submitted to the jury on Counts II and III.

During the trial Agent Crowley gave damaging evidence against Lipowitz, one of Smith's codefendants, stating to the jury the substance of a confession made by Lipowitz to him but in so testifying Crowley did not mention Smith by name or say anything which would implicate him in the robbery. Crowley's testimony in pertinent part is set out in the footnote below. [11]

The trial court gave the usual precatory charge that the inculpatory statements made by Lipowitz to Agent Crowley were to be completely disregarded by the jury in considering the guilt or innocence of Smith and Muller. No defendant raised any question as to the sufficiency of the court's limiting statement in this regard. But there was much colloquy between the trial judge and defendants' counsel, out of the presence of the jury, on the issue of defendants' failure to testify and as to what should be the instructions to the jury in the light of that circumstance. Smith's counsel stated that he had not requested any charge on the issue of Smith not testifying on his own behalf "because I am

---

8. Tr. 10.37.

9. The prosecuting attorney did not request any charge relating to failure of any defendant to testify and indeed took no cogent part in the colloquy of defendants' counsel with the court.

10. Lipowitz's pleading to Count I, which was based on the "non-violent" section of the federal bank robbery statutes, was probably offered in the hope of obtaining some clemency in sentencing.

11. Crowley testified to Lipowitz's inculpatory statements as follows: "He [Lipowitz] said that he realized that the FBI had a good case against him, that he was the man in the bank holding a shotgun. He said that he figured that he was probably identified by a witness on the street as far as his automobile was concerned and that there were recorded bills in his possession. He additionally told me in regard to the gun that he had

used an acetylene torch to cut off part of the shotgun barrel, and that he thought that this might have been a mistake. He later took the gun and fired it in the meadows, but it operated well. He said at the time he was in the bank with the shotgun it was loaded with buckshot and it was the only load that he could get." Tr. 7.18.

"He [also] said that out of the bank loot they got approximately $200 in cash, $200 in two-dollar bills, and they felt this was a bad luck sign, and it was his desire to destroy those bills. The other fellows insisted that it was good money and they decided to divide it, and he had seventy-eight of those two-dollar bills which he stated were buried. He told me that in relation to this individual who got out of the contractor's truck—and after he had given him the order to move to the side, after he entered the bank, he said had he not done as he demanded he would have been forced to shoot him." Tr. 7.19–7.20.

conscious of the fact that the defendant has the right to have no comment made at all." We find no authority supporting this position.[12] Lipowitz's counsel then stated to the court that it was his practice not to ask the court to deliver any instruction on the failure of a defendant to testify. Smith's counsel argued that Muller's request, if granted, left Smith in such a position that if Smith did not make a similar request to Muller's the jury might draw an unfavorable inference as to Smith. The points raised by Smith's counsel are not entirely clear, but they were phrased as follows: "I think there is an inference raised that perhaps there * * * [would be] some compulsion * * * [on] Mr. Smith to testify. I realize it is a dilemma, but this is the dilemma I find myself in by this request [Muller's No. 10], and I think it is highly prejudicial to Mr. Smith." The court then stated: "Do you argue that if Mr. D'Alessandro wants this charge he is not entitled to it?" Smith's counsel replied: "I think if it is going to affect my client's rights, as far as I am concerned I will argue that he is not entitled to it." After further discussion the court stated: "* * * I have one request here [for charge on failure to take the stand] * * * [that of] the defendant * * * Muller." The court went on to say that counsel were entitled to the charge, viz., as to no unfavorable inference to be drawn from a defendant not taking the stand, if they requested it but the court would not deliver such a charge if there was no request and that the court could not prevent Muller's counsel in his summation from referring to the fact that no unfavorable inference could be drawn from the fact that his client did not take the stand in his own defense.[13]

There was further discussion between the court and defendants' counsel which need not be repeated here but near the end of it Smith's counsel again referred to the "dilemma" of his client created, allegedly, by the court's failure to grant a severance and that this was a basis on which he had moved for severance. He went on to say: "Your Honor, I might like to say that the dilemma that the defendant Smith finds himself in now is whether it is the lesser of two evils to have the Court comment on the silence or to remain silent with respect to the [requested] comment of Mr. Muller.", and that "in view of the circumstances I respectfully request your Honor so to charge, [i. e.] that there be no adverse inference drawn from Mr. Smith's failure to testify." [14] The court then stated there was no disagreement as to the nature of the charge and in effect asked Smith's counsel again as to his position. Smith's counsel reiterated his request in substance as quoted immediately above. In short, Smith's counsel specifically agreed to the charge as given by the court and quoted above.

No specific request for severance was made at the end of the judge's charge by Smith's counsel and no objection was made or exception taken by him to the charge on this point or, as we have stated, to the charge limiting the effect of Lipowitz's inculpatory statements. See Rule 30, Fed.R.Crim.Proc., 18 U.S.C.

■ United States v. Bruton, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), had not been decided at the time of Smith's trial. Smith rests his case on *Bruton*. He contends that he was denied his right of confrontation and was prejudiced by the refusal of the court below to grant him a separate trial.[15,16] *Bru-*

---

12. Cf. DeLuna v. United States, 308 F.2d 140 (5 Cir. 1962).

13. There is no necessity for us to pass upon the correctness of the court's statement in this opinion.

14. See Tr. 10.1 et seq.

15. Smith also contends that the burden of showing that a joinder is prejudicial has been shifted from the defendant to the United States under the 1966 amendment to Rule 14, Fed.R.Crim.Proc., 18 U.S.C. We cannot agree. We conclude

*ton* expressly overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in which it was held that a trial court's instruction to disregard the confession of one defendant implicating by name another defendant on trial in the same proceeding was sufficient protection to the other defendant. In *Bruton* the Supreme Court set aside Bruton's conviction where his codefendant Evans had confessed orally that he and Bruton had committed the robbery despite a specific charge by the trial judge that Evans' oral confession was inadmissible hearsay against Bruton.[17] Mr. Justice Brennan, stated, 391 U.S. at 126, 88 S.Ct. at 1622: "We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule *Delli Paoli* and reverse. The basic premise of *Delli Paoli* was that it is 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him in committing the crime. 352 U.S., at 239 [77 S.Ct. 294, at 299]."

The issue presented is a narrow one and Smith insists that *Bruton* requires a decision in his favor. Had Smith been named in Lipowitz's statements as testified to by Agent Crowley, the principles enunciated in that decision might be applicable. In *Bruton,* Mr. Justice Brennan begins by stating: "This case presents the question, last considered in Delli

Paoli v. United States, 352 U.S. 232 [77 S.Ct. 294, 1 L.Ed.2d 278], whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession *inculpating the defendant* [Bruton] had to be disregarded in determining his guilt or innocence." (Emphasis added). The issue in *Bruton* was whether or not he had been denied the right of confrontation because Evans' extrajudicial statement inculpating him went to the jury without Bruton having the opportunity to cross-examine Evans.

In the instant case the recital before the jury by Agent Crowley of Lipowitz's inculpatory statements was so carefully restricted that neither Smith nor Muller was mentioned by name though Lipowitz's statements did indicate that he had confederates in the robbery, "other fellows". See note 11, *supra.* The evidence incriminating Smith, anything that Lipowitz was alleged to have said to Crowley entirely aside, was strong but that is not decisive of the present issue.

There was overwhelming evidence that the Ivy Hill Branch of the United States Savings Bank at Newark was robbed on March 28, 1967 and that three men participated in the robbery. Lipowitz admitted he was one of them, but insofar as his statements were concerned the other robbers could have been any two or more males within a great range of age and geography, any two or more men out of many.

We resume this evidence: Smith was identified by Mogul and Davenport as one of the three robbers. When arrested he had three twenty-dollar bait bills in his wallet, sitting in an automobile in which was found a paper bag containing

---

that it was not the intention of the framers of Rule 14 to shift the burden of showing prejudice from the defendant to the United States. No authority cited by Smith supports this view and we can find none.

16. No substantial issue of the voluntariness of Smith's inculpatory statement is

presented by this appeal. Smith at the time of his arrest stated to the FBI agent, "I guess it is too late for me to say I am sorry." Tr. 4.120.

17. There were in fact two confessions by Evans. One did not name Bruton; the other did. We conclude that it was the "name" confesion which caused reversal.

forty two-dollar bills, also fruits of the robbery. A TWA timetable with one of his fingerprints upon it was found in the car used by Lipowitz. Smith made a self-inculpatory statement: "I guess it's too late to say I am sorry."

In sum we can perceive no inculpation or implication [18] whatsoever of Smith by Lipowitz's confession. We hold therefore, that the principle of *Bruton* is not applicable here and that Smith was not denied his right of confrontation.[19], [20]

Other issues raised by the parties do not require discussion.

The judgment of conviction will be affirmed.

18. In Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the Supreme Court held that the *Bruton* ruling was to be applied retroactively only where there was a confession "implicating" a codefendant. We think that the term "inculpating" as used in *Bruton* and the term "implicating" as used in *Russell* are synonomous. Webster's New International Dictionary defines "implicate" as "To bring into intimate or incriminating connection; as the evidence *implicates* many in this conspiracy; to be *implicated* in a crime." At any rate we state that Smith was not implicated in the robbery by Lipowitz's confession.

19. We perceive no necessity here to discuss the principles of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for the facts relating to Lipowitz's statements do not bring this case within the range of that decision. Cf. United States v. Lipowitz (Appeal of Muller), 401 F.2d 591 (3 Cir. 1968).

20. The appeal at bar is not governed by the appeal of Muller, referred to in note 19, *supra*, for the following reasons: The three defendants in the case, Lipowitz, Muller and Smith, were indicted in a single indictment and were tried together, motions for severance having been denied as indicated in this opinion. Muller appealed at our No. 17075 and his judgment of conviction was affirmed per curiam, 401 F.2d 591 (3 Cir. 1968). Muller's appeal was based on the same record which we have before us on Smith's appeal. Muller relied on the doctrine of United States v. Bruton, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as Smith does here, but the issue that Muller raised Bruton-wise was based on the testimony of Frank L. Malvin, at least three times convicted of crimes. Malvin testified that in a conversation with Smith, Smith "said that he is pretty sure that Lipowitz signed a statement on him, so I told him 'Are you sure it wasn't Muller?' He said, 'No, he knows Muller and knew him for a long time, and Lipowitz was the green one and that he figured it had to be Lipowitz that told on him.'" Tr. 7.119–7.126. After this testimony had been received the trial court ordered it stricken from the record and very emphatically instructed the jury to disregard it completely. The trial judge stated: "The testimony of the witness Frank L. Malvin has been stricken by the Court and you are not to consider his testimony as part of the evidence in this case. You will recall that it was ordered by me that his testimony be stricken as unworthy of consideration. Mr. Malvin was the witness who testified that he had been convicted of crime three or four times and that he hoped by giving testimony on behalf of the government to receive consideration in connection with the crimes he committed. He related certain conversations that he had while in the cell with the defendant Lawrence Lipowitz, and on another occasion with the defendant Richard Smith. I concluded as a matter of law, with respect to which all counsel agree, including counsel for the government, that the statements he made on the stand in answer to questions propounded to him should not be considered by you, and I specifically and emphatically instruct you that you are to disregard his testimony entirely, and to draw no inference of any nature whatsoever from it against any one of the defendants." See note 8 cited to the text, 401 F.2d at 592–593.

We conclude here as we did in Muller's appeal that the facts respecting Malvin's testimony differ very substantially from the facts and holding in *Bruton* and that any prejudice that may have resulted from the testimony constitutes harmless error as that doctrine was enunciated in Chapman v. California. See note 19, *supra*. We emphasize that Muller in his appeal did not refer to Lipowitz's testimony in respect to the *Bruton* doctrine. On the other hand Smith in the appeal at bar has not referred at all to Malvin's testimony but bases his *Bruton* appeal on Lipowitz's extrajudicial statements as testified to by Agent Crowley.