**UNITED STATES of America ex rel. Alvin NELSON, Petitioner-Appellant,**

v.

**Harold FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent-Appellee.**

**No. 807, Docket 34282.**

United States Court of Appeals, Second Circuit.

Argued May 25, 1970.

Decided July 27, 1970.

**1056**

John A. Keeffe, New York City (Mc-Mahon, Keeffe & Costikyan, New York City, of counsel), for petitioner-appellant

Brenda Soloff, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Alvin Nelson appeals from an order of the United States District Court for the Southern District of New York denying his application for a writ of habeas corpus.

Appellant and one Isiah Biggins (indicted as Isiah Pitman) were jointly tried and convicted in Supreme Court, New York County, State of New York, of murder in the first degree, for the felony murder of Anthony Merlo during the course of the robbery of his bar, the Uptown Bar and Grill, in Manhattan. Appellant was sentenced to life imprisonment. The judgment of conviction was affirmed by the Appellate Division, People v. Pitman, 25 A.D.2d 637, 268 N.Y.S.2d 83 (1st Dept. 1966), and by the New York Court of Appeals, 18 N.Y.2d 919, 276 N.Y.S.2d 1001, 223 N.E.2d 494 (1966).

Appellant claims that his conviction was obtained in violation of his Sixth and Fourteenth Amendment rights in that (1) the confessions of his co-defendant Biggins were introduced at their joint trial without an opportunity for cross-examination, in violation of the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and (2) he was denied the right to compulsory process with respect to a subpoenaed witness.

Having exhausted his state remedies with respect to these claims, appellant sought federal habeas relief. The district court concluded that the admission of co-defendant Biggins' statements was harmless error under Harrington v. Cal-

ifornia, 395 U.S 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and that appellant's second claim was totally without merit. Accordingly the court denied appellant's petition though it subsequently granted a certificate of probable cause.

We affirm the judgment of the district court.

## I.

In formulating the rule announced in *Bruton,* and made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (per curiam), the Supreme Court stressed the "substantial risk that the jury, despite instructions to the contrary," will rely on "powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant" in determining the defendant's guilt. 391 U.S. at 126, 135–136, 88 S.Ct. at 1627. Consequently, for the *Bruton* rule to apply, the challenged statements must be clearly inculpatory. See United States v. Persico, 425 F.2d 1375 (2d Cir. 1970); United States v. Carella, 411 F.2d 729, 732 (2d Cir.), cert. denied sub nom. Erhart v. United States, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969); United States v. Rizzo, 418 F.2d 71, 79 (7th Cir. 1969); United States v. Davis, 418 F.2d 59, 63 (9th Cir. 1969); White v. United States, 415 F.2d 292, 294 (5th Cir. 1969); Slawek v. United States, 413 F.2d 957, 960–964 (8th Cir. 1969); United States v. Lipowitz, 407 F.2d 597, 602–603 (3d Cir.), cert. denied sub nom. Smith v. United States, 395 U.S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969).

Two confessions made by Biggins, one an oral statement given to an investigating police officer and the other a ques-tion and answer statement taken by an Assistant District Attorney, were introduced at the joint trial of Biggins and Nelson. Biggins did not take the stand.

Biggins' statements did not identify Nelson as his colleague in the robbery of the Uptown Bar, but referred instead to a man known only as "Oliver," who was described as being "about six feet two, about 175 pounds, 170 pounds, wearing a goatee, turtle neck sweater." Although Nelson more or less fit this physical description at the time of trial,[1] the jury was not thereby bound to infer that Nelson was in fact "Oliver," since there was other evidence as to the physical characteristics of the second robber of a contradictory nature. The most distinguishing physical feature of "Oliver" was his goatee, and although Nelson had a goatee during his trial, he was not wearing a goatee when arrested, and both he and Biggins called a number of witnesses to show that they did not have goatees or beards at the time the crime was committed. Moreover, the testimony of the eyewitnesses tended, if anything, to establish that it was Biggins, and not the robber they identified as Nelson, who wore a goatee on the night of the robbery.[2] Under the circumstances we do not believe Nelson was clearly inculpated by his general resemblance to "Oliver" at the time of trial.

Appellant's claim of a *Bruton* violation, however, is more directly addressed to Biggins' statement that he ran into "Oliver" earlier in the evening at the Garden of Eden Bar, a bar not far from the Uptown Bar, and that they proceeded from there to the Uptown Bar where the robbery and murder occurred. Appellant contends that this information, when considered in the light of testimo-

---

1. Nelson was six feet two, and weighed 160 pounds at the time of his arrest.

2. Levis Freeman, the bartender at the Uptown Bar, consistently identified Biggins as the man with the goatee. Margo Alicia, the deceased bar owner's girl friend, testified at trial that it was Nelson who had the goatee. However, she remembered having told the investigating police officer shortly after the robbery that she had seen Biggins about a year and a half ago and that she remembered him because he wore the same goatee on the night of the robbery that he had had before. Howard Sheffey, a New York City policeman, who had seen the two defendants at the Uptown Bar about two hours before the robbery occurred, remembered Nelson as having only a mustache.

ny given by Aaron Ruff, the manager of the Garden of Eden Bar, who testified that he saw both Biggins and Nelson in his bar between 9:30 and 10:30 p. m. on the evening of the robbery, necessarily implicated him in the commission of the crime. We do not agree. Although Nelson and Biggins had come into the Garden of Eden Bar together on several previous occasions, Ruff did not observe that the two men were together on the night of the crime. The jury would have had to make a substantial inference to implicate Nelson in the crime by virtue of his mere presence in the bar where Biggins said he ran into "Oliver." Nor, for the reasons discussed above, do we believe the jury would have more readily made this inference simply because of Nelson's general resemblance at the time of trial to the description of "Oliver" given by Biggins. Most significantly, to make the inference at all involved the use of Ruff's testimony placing Nelson in the same bar with Biggins earlier in the evening, and the truth of his testimony was independently subject to verification by cross-examination. In short, Biggins' statements were not clearly inculpatory because they alone did not serve to connect Nelson with the crime. See United States v. Rizzo, supra, 418 F.2d at 77–79; Slawek v. United States, supra, 413 F.2d at 960–962; United States v. Lipowitz, supra, 407 F.2d at 602–603 (no inculpation where defendant's fingerprints were found in car used by codefendant who had confessed that "other fellows" had aided him in the commission of the crime). Accordingly we conclude that Biggins' statements were not the type of "powerfully incriminating" statements to which the Court had reference in Bruton.

Assuming, however, that the jury might have taken Biggins' statements about "Oliver" to refer to Nelson, this case still does not present the kind of circumstances to which the rule of Bruton was directed. In Bruton, the Court recognized that "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions." That decision applies only where "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." 391 U.S. at 135, 88 S.Ct. at 1627. See Roberts v. Russell, supra, 392 U.S. at 294–295, 88 S.Ct. 1921. The confession at issue in Bruton was found by the Court to add "substantial, perhaps even critical, weight to the Government's case." Id. at 128, 88 S.Ct. at 1623.

In this case, two eyewitnesses, Levis Freeman, the bartender at the Uptown Bar, and Margo Alicia, the deceased bar owner's girl friend, positively identified Biggins and Nelson, both at trial and at pre-trial line-ups, as the perpetrators of the robbery and murder at the Uptown Bar.[3] A New York City policeman, as well as these two eyewitnesses to the crime, also saw the two defendants in the Uptown Bar once before that evening, approximately two hours before the crime occurred.

Thus it can hardly be said that Biggins' statements formed such a vital part of the Government's case against Nelson that they were bound to have a devastating effect on the minds of the jurors incurable by appropriate caution-

3. Appellant argues that a question as to the reliability of the eyewitness testimony is raised because of certain inconsistencies between what was told the police shortly after the event and the line-up and trial identifications. The inconsistencies were, however, minor. For instance there was some confusion as to who was the taller and who was the shorter of the two men, a confusion not surprising in view of the fact that there was only about an inch difference between the two defendants' heights and the shorter man was the heavier, a circumstance which might give him the appearance of being taller. On the other hand, the eyewitnesses consistently identified Biggins and Nelson as the robbers.

Nor was there any evidence that Margo Alicia's heavy drinking before the incident impaired in any way her powers of observation.

ary instructions. See Frazier v. Cupp, 394 U.S. 731, 735, 89 S.Ct. 1420, 22 L. Ed.2d 684 (1969); Wapnick v. United States, 406 F.2d 741, 742–743 (2d Cir. 1969); Slawek v. United States, *supra*, 413 F.2d at 961–962; United States v. Levinson, 405 F.2d 971, 988 (6th Cir. 1968), cert. denied, 395 U.S. 958, 89 S. Ct. 2097, 23 L.Ed.2d 744 (1969).

Also militating against the application of the *Bruton* rule to this case is the fact that Biggins' statements were quite obviously an attempt to exculpate himself from responsibility for the bar owner's murder. Biggins' statements portrayed "Oliver" as the principal actor in the robbery and as the actual killer of Merlo. This was in direct contradiction to the testimony of the eyewitnesses, who all agreed that it was Biggins, and not Nelson, who played the prime role in the robbery and who did the actual killing. The fear that a jury would not normally act on the presumption that a codefendant's "credibility is inevitably suspect," without the benefit of cross-examination, weighed heavily in the Court's decision in *Bruton*. See 391 U. S. at 136, 88 S.Ct. 1620. Here, however, Biggins' confessions were so clearly at odds with all other versions of the incident that it is quite possible that the jury disregarded them completely. Most certainly the jury was aware of their unreliability on the issue of Nelson's guilt.

■ Upon the introduction of Biggins' confessions, and again in its charge to the jury, the trial court carefully instructed the jury that these statements could be considered only with respect to the defendant Biggins and that they were not to be considered in any way with respect to the innocence or guilt of the defendant Nelson. Under the circumstances of this case, where the jury would have had to make a substan-

tial inference to inculpate appellant on the basis of his codefendant's statements, an inference possible only because of other testimony independently subject to cross-examination, and where the information, even if possibly incriminatory of appellant, could not have constituted a vital part of the Government's case against him, we hold that the cautionary instructions given by the trial court were adequate to protect appellant's constitutional rights. As we said in Wapnick v. United States, *supra*, 406 F.2d at 742: "[W]e find the possibility that the jury made an inference from [the] testimony that it would not have made in any event, and that this inference made the difference between acquittal and conviction for [appellant], far too remote to meet the *Bruton* tests."

### II.

Appellant also claims that the trial court effectively deprived him of his right to compulsory process by refusing to allow one of his subpoenaed witnesses to take the stand during the presentation of the Government's case [4] and by declining to require the witness to return on a set date. Appellant claims that this witness would have testified that appellant was not present in the Uptown Bar at the time earlier in the evening when he was placed there by other witnesses.

■ The point is frivolous. A trial judge exercises broad discretion in controlling the conduct of trial and the presentation of evidence. Appellant made no attempt to recall this witness, and it would appear that he voluntarily chose to abandon his testimony.

The Court is grateful to John A. Keeffe, assigned counsel, for his able and devoted efforts in behalf of the appellant.

Affirmed.

---

4. At the time, his codefendant's counsel was cross-examining the investigating police officer.