**UNITED STATES of America, Appellee,**

v.

**Calvin Lawrence TRUDO and George Lawrence Tatro, Appellants.**

**Nos. 1103, 1104, Dockets 71–1091, 71–1093.**

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1971.

Decided Sept. 21, 1971.

---

P. F. Langrock, Langrock & Sperry, Middlebury, Vt., for appellant Calvin L. Trudo.

Douglas C. Pierson, Richard W. Affolter, Burlington, Vt., for appellant George L. Tatro.

George W. F. Cook, U. S. Atty., District of Vermont, David A. Gibson, Asst. U. S. Atty., District of Vermont, for appellee.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

Appellants, Calvin Trudo and George Tatro, appeal from a judgment of conviction of bank robbery in violation of 18 U.S.C. § 2113(d) after a jury trial before Chief Judge Leddy in the District Court of Vermont. Trudo, George Tatro and his brother, Joshua Tatro, were tried together. Trudo was sentenced to 18 years imprisonment and the Tatro's each of 15 years imprisonment. Joshua Tatro's appeal has been severed from the present appeal. We affirm the convictions of appellants Trudo and George Tatro.

On the evening of December 24th, 1969, three men wearing heavy jackets, boots and ski masks which completely covered their faces, entered the Merchants National Bank of South Burlington, Vermont. Two were armed and took from the teller of the bank some $19,635.20, including bait money ($900 in ten dollar denomination) and $1,250 in new bills, the serial numbers of which had been recorded by the bank. Their masked faces precluded identification of the three men in the bank. Their convictions were based upon strong circumstantial evidence and admissions made by Trudo and Joshua Tatro to one Archambault. None of the defendants testified at the trial.

We believe that there was ample evidence to support the conviction of the appellants beyond a reasonable doubt and that the claim that the evidence was insufficient is without merit.

In brief review, the following evidence was adduced at the trial. On November 5th, 1969 appellant Trudo advised Archambault that he planned to rob the Merchants Bank in South Burlington and asked him to join the venture. In mid-December, 1969 Trudo advised Archambault that he had lined up George Tatro for the job and that the expected take would be about $35,000 because of the holiday season. Archambault testified on the trial that he rejected these overtures but as will be discussed *infra* all references to George Tatro were deleted. A witness testified that on December 24th, 1969 she had seen Trudo and two other unidentified men slowly driving in Trudo's car in the vicinity of the bank at about 2:30 in the afternoon. Another witness saw Trudo and two unidentified men in Trudo's car driving near the bank at about 3:30 to 4:00 p. m. Both witnesses knew Trudo and his car and were positive of the identification. The robbery took place at about 4:57 p. m.

At about 5:00 p. m. Trudo, George Tatro and Joshua Tatro entered the Roostertail Restaurant about three-quarters of a mile from the scene of the bank robbery. The barmaid testified that she knew the Tatros well but had never seen them at the restaurant before. She identified Trudo from a photograph and at the trial in person. Joshua Tatro appeared nervous although he normally was quiet and mild. Other witnesses testified that the three had entered the Roostertail at about 5:00 p. m. and left about an hour later.

There was abundant evidence of sudden acquisition of wealth on the part of both Trudo and George Tatro after the robbery. Trudo had a very meager income in the fall of 1969 and lived very modestly. In the weeks following the robbery there was an abrupt change in his spending habits. He purchased a used car for $500 and gave a $100 gift to a girl friend. In January, 1970 he paid $70 to have his road plowed of snow, a most lavish and quixotic gesture for any Vermonter irrespective of means. George Tatro was regularly employed at a modest salary and did cash an insurance refund check for $542.44 on December 29th, 1969. However, in January, 1970 George Tatro participated in poker games where the stakes were as high as $1,200 a hand. Although known as an average tipper, on three occasions in January, 1970 he bought drinks for everyone at the bar (8 to 10 people), paid his check with a $100 bill and left the waitress a $10 tip, all of which was unprecedented. In January, 1970 government agents found two scraps of paper which were identified as coming from currency wrappers used by the Merchants Bank in and adjacent to the home of Trudo. On January 30th, 1970 George Tatro was found to be in possession of a $10 bill which was part of the bait money taken from the bank. A gun and clothing similar to that used in the robbery were found in April, 1970 in the back of a restaurant adjacent to the Roostertail. Finally, all three denied before the Grand Jury in July, 1970 that they were together at the Roostertail on Christmas Eve, 1969 at or around 5:00 p. m. This evidence was properly admitted to establish consciousness of guilt. United States v. Corallo, 413 F.2d 1306, 1327 (2d Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969); United States v. Carella, 411 F.2d 729 (2d Cir.), cert. denied, sub nom. Erhart v. United States, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969); United States v. Capaldo, 402 F.2d 821, 824–825 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969). See also, United States v. Smolin, 182 F.2d 782 (2d Cir. 1950). In January, 1970 Joshua Tatro twice admitted to Archambault that he, his brother George and Trudo had robbed the Merchants Bank.

■ The principal objections raised by the appellants on this appeal revolve around the admission of the testimony by Archambault with respect to the statements made by appellant Trudo and Joshua Tatro. Appellants claim that this testimony violated the rule of Bru-

ton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* held that in a joint trial the introduction of the confession of one defendant which incriminates a co-defendant may violate the latter's right of cross-examination secured by the sixth amendment.

In this case the statement made to Archambault by Trudo in November, 1969 made no reference to any other party. In the statement made in December, 1969 Trudo implicated George Tatro. The statements made in January, 1970 by Joshua Tatro directly implicated his brother George Tatro as well as Trudo. In order to avoid the *Bruton* problem the trial judge instructed Archambault to omit any reference to George Tatro in testifying to Trudo's conversation and any reference to either Trudo or George Tatro in recounting Joshua Tatro's conversations in January, 1970. Moreover, counsel were instructed in cross-examination to limit their inquiry to the statements as redacted. The excision here was complete. In essence, the jury heard only that Trudo planned to rob the bank and that Joshua Tatro later admitted that he had robbed the bank. The admitted confessions only inculpated the person making the admission and in no way inculpated his co-defendants.

Appellants claim however that the evidentiary context in which the admissions were introduced, were clearly inculpatory. George Tatro was placed in the Roostertail immediately after the robbery with the two men who had made the admissions; moreover, there was clear proof that three men had robbed the bank. The cases relied upon by appellants to support their theory of "contextual inculpation" are clearly distinguishable.

In Serio v. United States, 131 U.S. App.D.C. 38, 401 F.2d 989 (1968), the redaction was limited. One La Shine confessed to a crime and named the appellant Serio as his accomplice. On the trial, although Serio's name was deleted from the confession, the words "another man" were substituted. The court

found that Serio was inevitably the other man under all the circumstances and therefore *Bruton* was violated. In the instant case, no reference in the statement to any other person or persons was made.

In United States ex rel. La Belle v. Mancusi, 404 F.2d 690 (2d Cir. 1968) two brothers were tried jointly for rape and murder. A confession made by one was introduced on the trial and redacted only to the extent of eliminating that portion which described the other brother as striking the death blow. However, the confession itself did place the other brother at the scene of the crime just before the death blow. It was clearly inculpatory since the jurors had to conclude that either brother or both had committed the crime on the basis of the redacted confession.

In United States ex rel. Nelson v. Follette, 430 F.2d 1055 (2d Cir. 1970) two defendants, Biggins and Nelson, were tried jointly for a bank robbery. Biggins confessed naming one "Oliver", as his accomplice and physically describing "Oliver." The confession also stated that he and "Oliver" were at a certain bar just prior to the commission of the crime. Other evidence at the trial established a close resemblance between Nelson and "Oliver" and further that Nelson and Biggins were often seen together at the bar mentioned in the confession. The court nevertheless held that there was no violation of *Bruton* because "In short, Biggins' statements were not clearly inculpatory because they alone did not serve to connect Nelson with the crime * * * Biggins' statements were not the type of powerfully incriminating statements to which the Court had reference in *Bruton*." (*Id.* at 1058.)

A reading of similar *Bruton* cases, including Posey v. United States, 416 F.2d 545 (5th Cir. 1969), cert. denied, sub. nom. Snowden v. United States, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970) ; Slawek v. United States, 413 F.2d 957 (8th Cir. 1969) ; United States v. Lipowitz, 407 F.2d 597 (3d Cir.), cert. denied,

sub. nom. Smith v. United States, 395 U. S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968), cert. denied, sub. nom. Strang v. United States, 395 U.S. 906, 958, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969); Wapnick v. United States, 406 F.2d 741 (2d Cir. 1969), reveals that the confessions, even as redacted, mentioned some unidentified accomplice. The confession by its terms would lead to speculation by the jury as to whether or not co-defendant was the other person. In none of these cases was any violation of *Bruton* found even though the admission itself indicated the presence of an accomplice.

*Bruton* is clearly not applicable here since the redacted statements heard by the jury in no way incriminate the co-defendants which is a necessary prerequisite (See United States ex rel. Nelson v. Follette, *supra*, 430 F.2d at 1057). The inference that if one defendant was guilty the co-defendants must also have been, is based not on the redacted confession but on the other independent evidence placing three men in the car "casing" the bank; the presence of three men in the bank; the presence of the appellants in the Roostertail after the robbery; the evidence of consciousness of guilt and newly acquired wealth—all of which evidence was subject to full attack and challenge. In light of the careful instructions of the trial court, both at the time of the admission of the confession and in the final charge to the jury, that the admissions were to be considered only against the person making them and not against the co-defendants, and the substantial circumstantial evidence adduced, we see no reason to extend the *Bruton* principle. See United States v. Persico, 425 F.2d 1375, 1383 (2d Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970); United States v. Carella, 411 F.2d 729 (2d Cir.), cert. denied, sub. nom. Erhart v. United States, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969). See also, United States v. Rizzo, 418 F.2d 71, 79 (7th Cir. 1969), cert. denied sub. nom. Tornabene

v. United States, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970); White v. United States, 415 F.2d 292 (5th Cir. 1969), cert. denied, 397 U.S. 993, 90 S.Ct. 1128, 25 L.Ed.2d 400 (1970); United States v. Fellabaum, 408 F.2d 220, 225 (7th Cir.), cert. denied sub. nom. Pyne v. United States, 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed.2d 69 (1969); Cortez v. United States, 405 F.2d 875 (9th Cir. 1968), cert. denied, 397 U.S. 926, 90 S. Ct. 932, 25 L.Ed.2d 106 (1970).

■ George Tatro moved for a severance at the beginning and close of the case. These motions were based primarily upon the damaging effect of the admissions made by Joshua Tatro and Trudo. To succeed in such a motion "[H]e must demonstrate substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one * * * a trial court's refusal to grant severance will rarely be disturbed on review." United States v. Borelli, 435 F.2d 500, 502 (2d Cir. 1970), citing United States v. DeSapio, 435 F.2d 272, 280 (2d Cir. 1970). Having found no violation of *Bruton*, we likewise find no abuse of discretion in denying these motions.

■ Ten days after the convictions in this case, the appellant Trudo moved for a new trial on the basis of newly discovered evidence which consisted of an affidavit by one, James Polidor, in which he stated that Archambault, a principal government witness, had admitted to him that he and three other men had robbed the Merchants National Bank on December 24th, 1969. After argument the trial court denied the motion.

The rule applicable to such a motion in this circuit was recently stated in United States v. Sposato, 446 F.2d 779, at 781 (2d Cir. 1971):

"A motion for a new trial based on newly discovered evidence is addressed to the discretion of the trial court. United States v. Silverman, 430 F.2d 106, 119 (2d Cir. 1970); (other cases cited). It is 'not favored and should be granted only with great caution,' United States v. Costello, 255 F.2d

876, 879 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958), and only when it is evident that the trial judge has abused his discretion." (Cases cited.)

At the hearing on the motion it was established that the affiant, James Polidor, had been convicted of at least eight felonies since 1964. In view of this fact, it could hardly be considered an abuse of discretion on the part of Judge Leddy to hold that the affidavit was not satisfactory proof that Archambault's testimony on trial was false.

We commend court appointed counsel, P. F. Langrock, Esq. and Douglas C. Pierson, Esq., for their excellent briefs and oral arguments.

Affirmed.