Harold **WAPNICK**, Petitioner-Appellant,

v.

**UNITED STATES of America**, Respondent-Appellee.

No. 181, Docket 29949.

United States Court of Appeals
Second Circuit.

Argued Nov. 16, 1965.

Decided Jan. 18, 1966.

Frances Kahn, New York City, for petitioner-appellant.

Harold Wapnick, pro se.

Leonard J. Theberge, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., on the brief), for respondent-appellee.

Before MEDINA, WATERMAN and FRIENDLY, Circuit Judges.

MEDINA, Circuit Judge.

Harold Wapnick was convicted with others on December 7, 1961 of the crimes of transporting or causing to be transported in interstate commerce stolen motor vehicles and conspiracy, in violation of 18 U.S.C., Sections 2312, 2 and 371. On direct appeal to this Court the judgment was affirmed in all respects. United States v. Wapnick, 2 Cir., 1963, 315 F.2d 96, cert. denied, 374 U.S. 829, 83 S.Ct. 1868, 10 L.Ed.2d 1052. As the last of a considerable variety of attempts to set aside or vacate the judgment of conviction, Wapnick initiated the collateral attack now under consideration, alleging that his constitutional rights had been infringed. Judge Bartels denied the application in an unreported opinion, and this appeal followed. The application was made under 28 U.S.C., Section 2255 and the hearing consisted of legal argument only, Wapnick's petition for a writ of *habeas corpus ad testificandum* having properly been denied.

The gist of Wapnick's contention is that his conviction on the 16 substantive counts of the indictment, on which he was given concurrent sentences separate from the consecutive sentence imposed for his conviction on the conspiracy count, cannot stand because 18 U.S.C., Section 2(b) which had previously read "Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such" was amended in 1951 to read "Whoever wilfully causes  *  *  * "; that the case was submitted to the jury without reference to "wilfully," an omission not noticed by any of the lawyers, or by the trial judge; and that this alleged error permeated the entire proceeding from indictment to conviction. Wapnick's assertion of constitutional infirmity is based not only on the above contention. He also claims due process of law was lacking because his own lawyer failed to notice the amendment introducing the word "wilfully," and that his failure to raise the point demonstrates his incompetency, made the trial a "mockery of justice," and deprived appellant of the effective assistance of counsel.

Except for the fact that the trial judge did read to the jury the entire Section 2 as it read before the 1951 amendment,[1] there is no substance what-

---

1. § 2. Principals

(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

(b) Whoever causes an act to be

ever to appellant's contention. As far as we are advised, even before the 1951 amendment the definition of a "principal" as one who "aids, abets, counsels, commands, induces or procures" the commission of a federal crime or "causes" an act to be done that would be a federal crime "if directly [done] by him or another" has uniformly been interpreted as meaning one who did these acts "wilfully" or "knowingly." In any event, immediately after reading Section 2 to the jury, Judge Bartels plainly stated this interpretation in the following words:

> "Thus anyone who does not commit the offense himself but who aids or abets an offender or causes an act to be done, which if directly performed by him would be an offense against the United States, is a principal. In other words, anyone who shares in the criminal intent of the principal and is wilfully associated with the venture in a way that by his action he wilfully participates or assists in bringing about the ultimate result is, under this section, in the same position as a principal."

Thus the case was tried and submitted to the jury on the theory that Wapnick must be acquitted if he did the acts charged against him innocently. Whatever error the trial judge may have made in reading the unamended statute in his charge was, therefore, cured by his explanation of its meaning to the jury.

But this is not all. The very counsel who is charged with incompetency argued the direct appeal to this Court on the theory that knowing participation must be established. Thus, Point III of his brief, referring to the same 16 substantive counts now under consideration, asserted that there was no evidence to warrant a finding that Wapnick "transported or caused to be transported in interstate commerce" the stolen automobiles referred to in Counts One through Sixteen, "nor, as a matter of law did the evidence warrant a finding that the ap-

pellant *knowingly* aided or abetted in the commission of the alleged crime." (Emphasis added.)

■ A scrutiny of the evidence adduced at the trial by the prosecution demonstrates beyond any shadow of doubt that the jury had ample justification for a finding that what Wapnick did he did "wilfully," "knowingly" and with the deliberate intention of masterminding a gang of thieves in an extensive "hot car" racket. It was he who originated the scheme, and he was a financial backer. It was he who procured and furnished the thieves who actually stole the cars, and it was he who devised the elaborate plan of concealment by the purchase of wrecks, the removal of the serial number identification plates and the affixing of such plates to cars purposely stolen because they were of the same year and make as the wrecks. The trial judge instructed the jury that there could be no conviction of a defendant unless the jury found that he knew the cars were stolen; and there was overwhelming evidence that Wapnick had such knowledge. Indeed, this Court has already found sufficient evidence to support Wapnick's conviction on every one of the 16 substantive counts submitted to the jury.

■ Despite all this we are urged to consider the point of wilfulness particularly with reference to the interstate feature of the substantive counts. In this connection we have given careful attention not only to the 45 page brief filed by counsel but also to two lengthy, handwritten documents entitled "Supplemental Brief" and "Rebuttal" and a typewritten reply brief submitted by appellant himself. The point, however, is a mere rehash of a contention made on the direct appeal from the judgment of conviction and already rejected by us. United States v. Wapnick, 2 Cir., 1963, 315 F.2d 96, cert. denied, 374 U.S. 829, 83 S.Ct. 1868, 10 L.Ed.2d 1052. Moreover, a Section 2255 proceeding may not be used to correct alleged trial errors

---

done, which if directly performed by him would be an offense against the

United States, is also a principal and punishable as such.

which were, or could have been, raised on direct appeal from the conviction. See, e. g., United States v. Gernie, 2 Cir., 1961, 287 F.2d 637, cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52; United States v. Crawley, 4 Cir., 1962, 309 F.2d 155; Davis v. United States, 7 Cir., 1963, 311 F.2d 495, cert. denied, 374 U.S. 846, 83 S.Ct. 1906, 10 L.Ed.2d 1067.

In any event, the instructions on the substantive counts were, in effect, that it was not necessary in order to convict to find that a particular defendant had knowledge that the cars in question were to be transported in interstate commerce; but he could be convicted if in fact the cars had been transported in interstate commerce after having been "doctored up," and defendant had set in motion a train of events such as to make such transporting a reasonably foreseeable event. The statutes, read together, prohibit transporting or causing to be transported. 18 U.S.C., Sections 2312 and 2(b). There was no error in the instructions thus given. See, e. g., United States v. Tannuzzo, 2 Cir., 1949, 174 F.2d 177; United States v. Kierschke, 6 Cir., 1963, 315 F.2d 315.

Here again there was ample evidence to warrant a finding that Wapnick knew or could reasonably foresee that many of the stolen cars were to be taken from the Bronx to Waterbury, Connecticut, and other places out of New York. Alfred DiNapoli, with whom many dealings were had, was a used car dealer in Waterbury, and Abe Steinbrecher was a wholesale used car dealer who did an out-of-state business.

If any of Wapnick's contentions may be said to relate to the conspiracy count, it will suffice to say that the instructions relative to wilfulness were explicit and, indeed, repetitious. Not only does this include wilfulness in the sense of deliberate intent to participate in this "hot car" racket, but knowledge that the stolen cars were to be transported in interstate commerce.

The indictment contained a sufficient recital of the operative facts, with references to 18 U.S.C., Sections 2312 and 2 in the customary manner. This was sufficient. There was no reason to suppose that this reference to Section 2, made in an indictment filed in 1960, was to the language of Section 2 as it stood prior to the 1951 amendment. Indeed, it may well be that the reference to Section 2 was mere surplusage.

While it may be said that the whole presentation on this appeal concerns issues that are fanciful and unreal, the charge of incompetency on the part of counsel is completely frivolous. We find no infringement of Wapnick's constitutional rights.

Affirmed.