Harold WAPNICK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 292, Docket 32931.

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1969.

Decided Feb. 11, 1969.

Harold Wapnick, appellant pro se.

Denis E. Dillon, Asst. U. S. Atty.
(Joseph P. Hoey, U. S. Atty., Eastern
Dist. of New York), for appellee.

Before LUMBARD, Chief Judge, and
MOORE and FRIENDLY, Circuit
Judges.

PER CURIAM:

Petitioner Harold Wapnick, a
certified public accountant, was convicted
in 1961, after a 35-day jury trial in the
District Court for the Eastern District
of New York, on 16 substantive counts
and a conspiracy count of an indictment
charging the transportation of stolen
motor vehicles in interstate commerce in
violation of 18 U.S.C. § 2312. This court
affirmed his conviction and the denial
of a motion for a new trial. United
States v. Wapnick, 315 F.2d 96 (2 Cir.
1963), cert. denied, 374 U.S. 829, 83
S.Ct. 1868, 10 L.Ed.2d 1052 rehearing
denied, 375 U.S. 871, 84 S.Ct. 30, 11 L.Ed.
2d 100, 383 U.S. 923, 86 S.Ct. 879, 15
L.Ed.2d 680. We have likewise affirmed
two previous denials of motions for post-
conviction relief. Wapnick v. United
States, 355 F.2d 136 (2 Cir. 1966); Wap-
nick v. Chappell, 376 F.2d 853 (2 Cir.
1967). After being released from cus-
tody but while he was still on parole,
Wapnick filed this further petition under
28 U.S.C. § 2255. He claimed that his
trial had been fatally infected by the
admission of a post-arrest statement of
a co-conspirator allegedly implicating
him in the crime, in violation of the rule
laid down in Bruton v. United States,
391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d
476 (1968), which the Supreme Court
has held to be applicable on collateral

attack, Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Treating the petition as one for *coram nobis,* United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), even though the claimed error was of law rather than of fact, cf. Deckard v. United States, 381 F.2d 77 (8 Cir. 1967), Judge Bartels denied relief. We have no occasion to consider the ruling with respect to *coram nobis* since parole status is "custody" within the meaning of § 2255. See Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

■ In an earlier opinion, 355 F.2d at 138, Judge Medina characterized the evidence as showing that Wapnick had masterminded "a gang of thieves in an extensive 'hot car' racket." The opinion continued:

> "It was he who originated the scheme, and he was a financial backer. It was he who procured and furnished the thieves who actually stole the cars, and it was he who devised the elaborate plan of concealment by the purchase of wrecks, the removal of the serial number identification plates and the affixing of such plates to cars purposely stolen because they were of the same year and make as the wrecks."

We are asked to set the conviction aside because of the admission of a single item of evidence. Detective Francis testified that, during his investigation of the car stealing, he summoned one of the co-defendants, Ezersky, to come to his office with certain official forms used in the transfer of cars. On being questioned, Ezersky said he had received these from "another person" who had told him to fill them in with fictitious names. The court instructed both during Francis' testimony and in the charge that this evidence could be considered only against Ezersky. Wapnick claims nevertheless that he was inevitably implicated by a question on his cross-examination whether he was not the "person," although he explicitly denied this, and by the submission to the jury of the indictment, which listed as an overt act Wapnick's directing Ezersky to prepare the forms. For these reasons, and also because of the structure of the government's case, we think the jury would probably have regarded Wapnick as the "person," despite the court's careful instruction to the contrary. The prosecutor in his direct examination of Francis emphasized the fact that a single unnamed person had given Ezersky all his orders relating to car transfer forms. A used car dealer who had bought cars from Wapnick testified that Wapnick had supplied the necessary forms through Ezersky, and his bookkeeper testified to the same effect. Wapnick himself admitted he used Ezersky to make out the forms, though he denied knowing that false names were used. Throughout the trial Wapnick was presented as the organizer and manager of the conspiracy, and therefore as the man most likely to be responsible for procuring forged papers.

This, however, is not enough to require reversal, for the Supreme Court recognized in *Bruton* that "not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions." That decision applies only when "the risk that the jury will not, or cannot, follow instructions is so great, *and the consequences of failure so vital to the defendant,* that the practical and human limitations of the jury system cannot be ignored." 391 U.S. at 135, 88 S.Ct. at 1627 (emphasis supplied). During the thirty-five days of the trial in this case, four of Wapnick's former co-conspirators who had turned state's evidence testified at length about the nature of the conspiracy and about Wapnick's role in it. There was ample admissible testimony, discussed above, from which the jury could have inferred that Ezersky had forged the transfer forms on Wapnick's order. In these circumstances, we find the possibility that the jury made an inference from Francis' testimony that it would not have made

in any event, and that this inference made the difference between acquittal and conviction for Wapnick, far too remote to meet the *Bruton* tests.

Affirmed.