**Harold WAPNICK, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 69–C–703.**

United States District Court, E. D. New York.

Dec. 11, 1969.

Harold Wapnick, pro se.

Edward R. Neaher, U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM—DECISION and ORDER

BARTELS, District Judge.

This petition by Harold Wapnick for post-conviction relief, filed on June 18, 1969, approximately one month before his parole expired, is his fifth application. See United States v. Wapnick, 315 F.2d 96 (2d Cir. 1963), cert. denied, 374 U.S. 829, 83 S.Ct. 1868, 10 L.Ed.2d 1052 (1963), rehearing denied, 375 U.S. 871, 84 S.Ct. 30, 11 L.Ed.2d 100 (1963) and 383 U.S. 923, 86 S.Ct. 879, 15 L.Ed.2d 680 (1966); Wapnick v. United States, 355 F.2d 136 (2d Cir. 1966); Wapnick v. Chappell, 376 F.2d 853 (2d Cir. 1967); Wapnick v. United States, 406 F.2d 741 (2d Cir. 1969). Wapnick was convicted in 1961, after a 35-day jury trial, on sixteen substantive counts and a conspiracy count of an indictment charging the transportation of stolen motor vehicles in interstate commerce in violation of 18 U.S.C. § 2312. The present application was filed under 28 U.S.C. § 2255 and is predicated upon a claim that the prosecutor violated Wapnick's constitutional rights in questioning him concerning an offense with respect to which Wapnick claims he had been acquitted, without informing the jury of his acquittal. Subsequently Wapnick supplemented the petition by two other affidavits raising additional claims involving other illegal questioning and the knowing use of perjured testimony, which will also be hereafter considered. Thereafter, on September 3, 1969, Wapnick moved to disqualify the court on the ground that it was "personally biased and prejudiced against petitioner", which necessarily will be adjudicated at the outset.

### Motion to Disqualify

The legal sufficiency of a disqualification application under 28 U.S.C. § 144 is tested by the standards enumerated in Berger v. United States, 255 U.S. 22, at 33 to 34, 41 S.Ct. 230, at 233, 65 L.Ed. 481 (1921), requiring an affidavit to show "a bent of mind that may prevent or impede impartiality", there being "as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." Rosen v. Sugarman, 357 F.2d 794, 797 (2d Cir. 1966); In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). The relevant portions of the affidavit in support of

this motion are based upon Wapnick's opinion that his sentence was unduly harsh and that Wapnick had heard from various attorneys who had spoken to the court that the court "was highly prejudiced against defendant", and that mail sent by Wapnick, while incarcerated, to the court was returned unopened, and that the court participated in the cross-examination of him during the trial. Not only are these allegations vague and conclusory but they also fail to state any facts which in any way establish the requisite personal bias or prejudice. In this connection, a question is raised whether an application which is limited to a mere interpretation of the law as set forth in the authorities and requires no hearing, falls within the purview of 28 U.S.C. § 144 since an erroneous or biased interpretation of the law can be easily discerned from the opinion and corrected by an appellate court. Compare, Palmieri v. United States, 286 F.Supp. 520 (S.D.N.Y.1968). However that may be, the court did apply the standards required by 28 U.S.C. § 144 and finding no basis for disqualification, now proceeds to the merits.

### Alleged Illegal Questions Concerning Stolen Cars

In the course of cross-examination the prosecutor posed, among others, the following questions to Wapnick, which he claims fatally affected his trial:

"Q. Did you sell a 1957 Cadillac to Good Friend Automobile?"

"Q. Was that a stolen car?"

"Q. Was it stolen at the time that you sold it?"

The gist of Wapnick's contention is that he was acquitted in the New York State Supreme Court, Bronx County (Bronx court) of a charge of selling stolen cars to Good Friend Auto Sales (Steinbrecher) and that the prosecutor had knowledge of this acquittal at the time of the questioning and should have divulged the acquittal to the jury. In failing to do so Wapnick claims he was denied due process, citing Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This claim has no merit for two reasons.

First, the acquittal to which Wapnick referred in the Bronx court was not a finding that the 1957 Cadillac was not a stolen car. Wapnick was charged in the Bronx court with grand larceny arising out of the receipt of a check illegally obtained from Steinbrecher by false and fraudulent representations that he had legal title to the 1957 Cadillac sold together with a 1958 Ford car (concerning which there was no charge against Wapnick) when, in fact, he knew he had no such title since the Cadillac was stolen. The only thing Wapnick was acquitted of by the verdict of the Bronx court jury was having *knowledge* that the car was stolen, but the verdict was not a finding that the car was not stolen. Accordingly, the prosecutor's question, "Was it stolen at the time that you sold it?", was perfectly proper. Nor was the acquittal in the Bronx court a bar to the prosecution of Wapnick in the Federal court under the Dyer Act. See United States v. Wapnick, 198 F.Supp. 359 (E.D. N.Y.1961), affirmed, 315 F.2d 96 (2d Cir. 1963). At that trial the prosecutor had a right to cross-examine Wapnick concerning the essential elements of the Federal offense which involved the 1957 Cadillac. Second, if there were any taint to these questions, the petitioner and his capable attorney were both aware of the prior acquittal in the Bronx court and they had ample opportunity to explore the question and raise the issue at the time of the trial if they thought that this acquittal was pertinent to Wapnick's defense. In addition, it is much too late in the proceedings to now raise an issue of this kind for the first time.

Petitioner also argues that the failure of the prosecutor to disclose his acquittal in the Bronx court prejudiced his trial with respect to eleven other stolen cars involved in the Federal court and mentioned in counts 6 to 16 of the indictment. The fact is that these cars were not involved in the trial in the Bronx court and any possible prejudice concerning the theft of these cars is entirely

speculative. In passing, we note that the petitioner quixotically refers to another case in which he says he "was acquitted again based on the same facts". This, of course, is not true. The case he refers to is Steinbrecher v. Wapnick, 24 N.Y.2d 354, 300 N.Y.S.2d 555, 248 N.E. 2d 419 (1969), which was a civil case in which the New York Court of Appeals held that Wapnick's refusal to answer certain interrogatories on the ground that the answers might incriminate him should not have resulted in a default judgment for the plaintiff.

### Alleged Illegal Questions About Co-Defendant's Pretrial Statements

This claim arises out of some afterthoughts that Wapnick had as set forth in his subsequent affidavit of July 9, 1969. In his fourth post-conviction application Wapnick claimed that he had been denied his constitutional right of confrontation in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), by reason of the admission into evidence of certain pretrial statements by co-defendant Ezersky. The charge was that Detective Francis had testified as to a confession by Ezersky as to who instructed him to fill out forms, which allegedly implicated Wapnick. There was grave doubt whether the so-called confession in any way identified Wapnick. In all events the Court of Appeals held that there was a possibility that the jury might have inferred that Wapnick was identified by Ezersky's statement to Detective Francis and that the testimony was inadmissible hearsay. But the court also held that in view of the ample admissible testimony, this potential inference was not sufficient to make the difference between acquittal and conviction which is necessary to satisfy the *Bruton* test. Accordingly, it refused to reverse. Wapnick v. United States, 406 F.2d 741 (2d Cir. 1969).

What Wapnick contends now, is that the trial court questioned him about Detective Francis' testimony prior to the questioning by the prosecutor and that this questioning by the court had a great impact upon the minds of the jurors and that the Court of Appeals at the time of its last decision was unaware of this questioning by the court. We believe this contention is likewise without merit. We cannot assume that the Court of Appeals was unaware of the record in this case at the time of its decision. As a matter of fact, according to the record, Wapnick insisted upon answering the court's question after the court had instructed him to forget it. In his answer he named two others, not himself, as the person or persons who instructed Ezersky to fill in the pertinent M.V. forms.

But denial of this claim is required for another reason, i. e., it should have been raised upon the prior application. The petition is no more than an application predicated on the same legal ground which has been previously presented and determined by the Court of Appeals on the merits adversely to Wapnick. 28 U.S.C. § 2255 [1]; Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); United States ex rel. Schnitzler v. Follette, 406 F.2d 319 (2d Cir. 1969), cert. denied, 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 244 (1969); United States v. Fischer, 381 F. 2d 509 (2d Cir. 1967), cert. denied, 390 U.S. 973, 88 S.Ct. 1064, 19 L.Ed.2d 1185 (1968); Jakalski v. Attorney General of the United States, 409 F.2d 494 (7th Cir. 1969). That petitioner has alleged an additional fact to support the same legal ground is immaterial. Sanders v. United States, *supra*, 373 U.S. at 16, 83 S.Ct. at 1068.

### Alleged Use of Perjured Testimony

Wapnick attempts to escape the bar of the statute and *Sanders* by

---

1. The pertinent portion of the statute reads as follows:
   "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

making a final claim that Detective Francis perjured himself in the Federal court since Francis testified in the prior Bronx court case that Ezersky had made no statement to him and the prosecutor knew it.[2]  Even assuming the truth of Wapnick's allegation, he would nevertheless be entitled to no relief.  In seeking to vacate a judgment allegedly based on perjured testimony, Wapnick has the burden of establishing that it was material to the conviction (Dansby v. United States, 291 F.Supp. 790 (S.D.N.Y. 1968)), and the Court of Appeals has previously decided (Wapnick v. United States, 406 F.2d 741 (2d Cir. 1969)) that the statements of Ezersky that someone had told him to fill in the M.V. forms were not material to the conviction.[3]

Finally, it is relevant to observe that there is no indication whatsoever in the record that the prosecutor knew or should have known of Detective Francis' testimony in the Bronx court case.  On the other hand, both Wapnick and his attorney were both fully aware at the time of the trial of the existence of any contradiction in the testimony of Detective Francis.  Again, this last claim was known or should have been known at the time of petitioner's last application for § 2255 relief and thus this contention is another example of the use and abuse by Wapnick of the remedy provided by 28 U.S.C. § 2255.  Sanders v. United States, *supra*, 373 U.S. at 18, 83 S.Ct. 1068.

Petition denied.  So ordered.

2.  The Bronx court recorded testimony was never filed in that court nor was it found in the files of this court.  In an effort to check what was said by Wapnick, the court requested him to make available one of his copies of the testimony which he refused to do, causing some delay in the opinion.

3.  In an even earlier § 2255 motion by Wapnick, Judge Medina characterized the evidence against Wapnick in the following manner:
  "A scrutiny of the evidence adduced at the trial by the prosecution demonstrates beyond any shadow of doubt that the jury had ample justification

for a finding that what Wapnick did he did 'wilfully,' 'knowingly' and with the deliberate intention of masterminding a gang of thieves in an extensive 'hot car' racket.  It was he who originated the scheme, and he was a financial backer.  It was he who procured and furnished the thieves who actually stole the cars, and it was he who devised the elaborate plan of concealment by the purchase of wrecks, the removal of the serial number identification plates and the affixing of such plates to cars purposely stolen because they were of the same year and make as the wrecks."  Wapnick v. United States, 355 F.2d 136, 138 (2d Cir. 1966).