UNITED STATES of America ex rel. Kenneth HEADLEY et al., Petitioners,

v.

Vincent R. MANCUSI, Warden, Attica Prison, Attica, New York, et al., Respondents.

Nos. 67 Civ. 169, 64 Civ. 2071 and 68 Civ. 1728.

United States District Court, S. D. New York.

July 25, 1974.

Fuller, Lawton & Moyles, P. C., New York City, for petitioners; by William E. Fuller, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., for respondents; by Stanley L. Kantor, Brenda Soloff, Asst. Attys. Gen., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

In their consolidated petitions for habeas corpus [1] petitioners Headley, Huntley and Sams raise four constitutional challenges to their 1960 conviction for armed robbery. They claim: (1) that the admission into evidence of an illegally seized gun violated the exclusionary rule laid down in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); (2) that the admission into evidence of Huntley's confession implicating the other petitioners, coupled with his failure to take the stand, deprived Headley and Sams of the right to confrontation as defined in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); (3) that Huntley was convicted on the basis of an involuntary confession in violation of the

---

1. Sams and Huntley filed their petitions in the Southern District of New York. Headley's petition was filed in the Northern District of New York in 1966, and transferred to the Southern District in 1967. The three petitions were consolidated by Judge Palmieri in 1968. Judge Palmieri denied petitioners' motion to amend their petitions to add claims under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), ruling that they must first exhaust state remedies. The Second Circuit affirmed. United States ex rel. Headley v. Mancusi, 415 F.2d 277 (2d Cir. 1969), cert. denied, 399 U.S. 932, 90 S.Ct. 2265, 26 L. Ed.2d 802 (1970). The amended petitions containing both exhausted and unexhausted claims were resubmitted in 1972 to Judge Palmieri, who declined to sort out the exhausted from the unexhausted claims and instead denied the petition without prejudice "to abide the submission of all federal claims as to which petitioners can demonstrate that no exhaustion problem is present." United States ex rel. Headley, Sams and Huntley, 64 Civ. 2071 (S.D.N.Y., filed Apr. 24, 1972) at 5.

rules laid down in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (4) that Sams was convicted on the basis of an involuntary admission also in violation of the rules laid down in Jackson v. Denno, *supra,* Escobedo v. Illinois, *supra,* and Miranda v. Arizona, *supra.* These four claims have been fully exhausted in the state courts and are therefore ripe for adjudication.[2] 28 U.S.C. § 2254. The first step in deciding these claims, however, is to review the facts on which they are based.

FACTS

Petitioners were jointly tried and convicted by a jury in the Court of General Sessions of New York County. The case arose out of the payroll robbery of one Morris Baden on January 20, 1959, as he returned from the bank to his place of employment at the Jelrus Precision Casting Co. with the company payroll of $5,849.82. He testified at the trial that as he entered the building and started up the stairs to the plant office on the second floor, a voice behind him shouted, "Hey, hold it", and he turned around to face two men with guns. At this point another employee of Jelrus Precision, Ernest Bockli, happened to emerge from the second floor office and start down the stairs. The two armed men pushed Baden and Bockli against the wall, took the payroll and disappeared. At trial both Baden and Bockli identified the two men as Headley and Sams.

The evidence against Huntley consisted mainly of his confession in which he described the planning of the robbery and recounted his own role and those of four others.[3] The confession was introduced through the testimony of Philip Dennehy, the chief interrogating officer, who questioned Huntley following his arrest on March 8, 1959. In reciting the confession, Dennehy did not name the other participants but rather referred to them as A, B, C and D.

Huntley told Dennehy he thought it was about the second week of January 1969, that he, A, B, C and D got together on "the $6,000 payroll stickup." He said that a few days earlier he had met his old friend D at a bar and that he and D had confided to each other that they were "broke". D told him that he worked for the Precision Metal Company where he said "the payroll had never been taken; it should be easy." Huntley told Dennehy he relayed the information to A, and that he, A, B and C met the next night at A's house and discussed plans for the stickup. He said that A was the "boss of the job".

On the day of the crime he recounted that they met at A's house and drove in C's car to West 131st Street where they waited from 9 a. m. until after noon. At about 12:15 or 12:30 p. m. a white man about 50 years old came out of the building holding an envelope, and Huntley followed him to the bank at 125th Street and Broadway. Huntley then returned to the car and told A that the man had gone into the bank. A then told B, "I'm going to take you with me", and told Huntley to stay downstairs on the sidewalk in front of the entrance to the building from which the man had emerged. When the man returned, A and B followed him into the building while Huntley remained outside.

2. The process of exhaustion has consumed much of what would otherwise amount to appalling delay in the disposition of these petitions. The process was not complete until November 1972. See People v. Headley, 40 A.D.2d 765, 336 N.Y.S.2d 413 (App.Div. 1st Dept.1972); People v. Sams, 40 A.D.2d 766, 336 N.Y.S.2d 414 (App.Div. 1st Dept.1972); People v. Sams, 40 A.D.2d 955, 338 N.Y.S.2d 382 (App.Div. 1st Dept.1972). When the case was transferred to me in February 1973, it had been technically closed and some of the papers had disappeared. A considerable amount of time was thereafter spent in gathering papers and transcripts and in briefing the issues.

3. Despite the apparent involvement of five people in the robbery, petitioners were the only defendants at their trial.

In less than a minute A and B reappeared, and all three returned to the car, a yellow Packard owned by C, who drove a few blocks and then let the others out. A and B gave Huntley the money; A also gave him a revolver with white tape on the handle and B gave him a black automatic. They then "split up" and Huntley took a taxi to a prearranged meeting place on West 123rd Street between Lenox and 7th Avenues. Five or ten minutes later A and B arrived and A divided the money which was "in blocks of tens, twenties, one dollar bills and some change". A gave $1,600 each to B and Huntley, gave $450 to C when he arrived an hour later, and gave $400 to Huntley to be delivered to D at his house.

Huntley also told Dennehy that he had a .25 caliber Italian automatic, nickel plated, with pearl handles, which he had bought on West 107th Street from a man called Phil, who had since died of a heart attack. He said he had spent his share of the proceeds on food, drink, gambling and had paid a dental bill for his girl friend "Tiny" [Eleanor Gordon].

In addition to recounting Huntley's confession, Dennehy also testified to the admissions made by Sams shortly after his arrest on March 8, 1959. When he first asked Sams his name and address, Sams told Dennehy he already knew them, and remained bent over in his chair without looking at Dennehy. Then Sams suddenly protested, "Those guys said they would leave me out of this" and started hitting the glass topped desk with his fist. When Dennehy told him to stop and asked him what the matter was, he said he could not do any time in prison, to which Dennehy replied, "Then why did you get involved in this stickup?" Sams told Dennehy that he was going to die anyway and that he figured "he could use a couple of months of good luck". In response to Dennehy's inquiry as to what he had done with the gun which he had on the stickup, Sams replied that he never had a gun of his own, that he always borrowed one and that he gave it back. These admissions were supplemented by the testimony of Patrolman Leonard Williams who arrested Sams and drove him to the station house. On the way he said he asked Sams how he had become involved and Sams answered that he had "felt lucky and wanted to take a chance."

Dennehy also testified that he had found the only gun introduced at trial under an overturned bucket on the fire escape outside the kitchen window of the apartment where Headley, his parents and his girl friend, Dolores Kelly, lived.

Dolores Kelly identified all three defendants and testified about the planning of the robbery. She said that on January 19, 1959, from her bedroom she overheard Headley saying to Huntley, Sams and a "Bill" Wright that they were going somewhere, that "Lucky" [Sams] was to wait downstairs while Headley and "Charlie" [Huntley] went upstairs, that "Bill" [Wright] was to drive the car, and that three weapons were to be used. She said that the men agreed to, and did, meet at Headley's apartment the next morning, January 20, to go over the plan once more and that when they left, Headley remained behind for a moment, strapping a holster to his belt and placing a pistol in it. She added that Headley returned to the apartment that afternoon and counted out $1,600 in small bills.

Petitioners' convictions were unanimously affirmed by the Appellate Division without opinion (People v. Headley, Huntley and Sams, 15 A.D.2d 735 (1st Dept. 1962)), and leave to appeal to the Court of Appeals was denied.[4] Headley and Sams filed a joint petition for certiorari in the United States Supreme Court, claiming that their cases should have been severed because of Huntley's confession; this was denied. Headley v. New York, 370 U.S. 962, 82 S.Ct. 1620, 8 L.Ed.2d 829 (1962). Huntley too, petitioned for certiorari claiming that (1) his confession was inadmissible because

---

4. This decision was not reported.

obtained during illegal detention; (2) his conviction was invalid because based on an illegal arrest and search; and (3) that the witness, Dolores Kelly, was incompetent to testify because of addiction to narcotics.[5] This petition was likewise denied. Huntley v. New York, 371 U.S. 837, 83 S.Ct. 63, 9 L.Ed.2d 73 (1962).

Two years later, however, Huntley's application for leave to appeal to the Court of Appeals was reconsidered and granted in light of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and his case was later remanded for a hearing on the question of the voluntariness of his confession. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). After an extensive hearing, Justice Geller found the confession voluntary. People v. Huntley, 46 Misc.2d 209, 259 N.Y.S.2d 369 (Sup.Ct.1965), aff'd 27 A.D.2d 904, 281 N.Y.S.2d 970 (1st Dept.), aff'd 21 N.Y.2d 659, 287 N.Y.S.2d 90, 234 N.E.2d 252 (1967). A similar hearing was held in 1968 with respect to Sams' admissions and they too were found to be voluntary in an unreported decision which was affirmed. People v. Sams, 40 A.D.2d 955, 338 N.Y.S.2d 382 (1st Dept. 1972).[6] Petitioners' other claims, to which I now turn, were dismissed without a hearing by the state courts.[7]

*Mapp Claim*

The Mapp claim is advanced only by petitioners Headley and Sams, Huntley having failed to raise it in the state courts. The claim is that the gun which was recognized by several witnesses and introduced into evidence at trial was seized from the Headley apartment during a general, warrantless search conducted while Headley was already in jail and that Headley's and Sams' Fourth Amendment rights were thereby violated under the holding of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which was decided after petitioners were convicted but was made retroactive to all cases, including petitioners', which were then pending on appeal. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

■ Respondents dispute the validity of this claim with regard to both Sams and Headley but for different reasons. They urge that Sams' claim was long ago decided adversely by Judge Croake of this court on the ground that Sams lacked standing to raise it (United States ex rel. Sams v. Fay, 64 Civ. 2071 (S.D.N.Y., Sept. 15, 1964)),[8] and that I ought therefore to exercise the discretion permitted by 28 U.S.C. § 2244(b) to dismiss it as repetitious.

■ There are two obstacles to this course. First, the premise of the statute as amended by Congress in 1966 is that a hearing was held on the merits of the previous application. Section 2244(b) begins as follows:

"When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of

---

5. The latter two claims were raised for the first time in the petition for certiorari.

6. The denial of leave to appeal from this decision is not reported.

7. See People v. Sams, 39 Misc.2d 345, 240 N.Y.S.2d 787 (Supt.Ct.1963), aff'd, 20 A.D.2d 683, 246 N.Y.S.2d 383 (1st Dept.1964); People v. Headley, 23 A.D.2d 969, 259 N.Y.S.2d 788 (1st Dept.1965); People v. Sams, 40 A.D.2d 766, 336 N.Y.S.2d 414 (1st Dept. 1972); People v. Headley, 40 A.D.2d 765, 336 N.Y.S.2d 413 (1st Dept.1972).

8. The fact that Judge Croake's decision was based on an earlier unamended version of the same petition as in the case at bar raises the possibility that I may be bound by Judge Croake's opinion as the law of the case. Apart from the fact that the doctrine of law of the case is not strictly applied in this Circuit, see American Optical Company v. Curtiss, 59 F.R.D. 644 (S.D.N.Y.1973) and cases there cited, it is well established that principles of res judicata will not be permitted to bar the asertion of constitutional rights by means of a petition for habeas corpus. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

the United States . . . release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained . . ."

Here there is no evidence that Judge Croake conducted a hearing on the merits; thus the statute does not provide an adequate basis for dismissal of the claim. Hutchinson v. Craven, 415 F.2d 278 (9th Cir. 1969). It is true that in this Circuit the statute has been construed to require only consideration of the merits of a prior application rather than an actual hearing. United States ex rel. Schnitzler v. Follette, 406 F.2d 319 (2d Cir.), cert. denied 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 244 (1969); United States ex rel. James v. Follette, 431 F.2d 708 (2d Cir. 1970), cert. denied, 401 U.S. 979, 91 S.Ct. 1209, 28 L. Ed.2d 329 (1971). Nonetheless, where no hearing has been held on the first application, the statute seems to me to suggest that a district judge faced with a second application raising the same claim ought to re-examine the merits.

Furthermore, the statute is not designed to guide a district judge in sifting between the various claims of a petition for habeas corpus of which some may be novel and others repetitive; rather it is addressed to the question whether the petition need be entertained at all. In Sams' case the petition will be entertained for the purpose of considering his other two claims no matter what approach is taken to the disposition of the *Mapp* issue. There seems little reason therefore not to adjudicate this issue on its merits.

■■ In any event, little time is required to conclude as did Judge Croake that Sams has no standing to contest the admission into evidence of the gun seized from the Headley apartment. The law could hardly be clearer that except in certain narrowly defined circumstances a possessory interest in the premises searched or the items seized is a necessary prerequisite to the assertion of Fourth Amendment rights. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Yet Sams alleges no possessory interest in either the apartment or the gun. Nor does this case fall within one of the exceptions established in Jones v. United States, *supra*, granting a defendant standing to suppress evidence, despite his lack of a possessory interest, if he was legitimately on the premises at the time of the search or if possession of the item seized is an essential element of the crime charged. Sams' *Mapp* claim must therefore be dismissed.

Headley on the other hand, as one of the occupants of the apartment, concededly possesses the requisite standing to assert his *Mapp* claim. His claim is contested on other grounds. Respondents argue, first, that in failing to raise the issue on direct appeal from his conviction, he has deliberately bypassed state procedures and hence is foreclosed from raising it on federal habeas corpus. Second, respondents contend that Headley's rights were not violated in any event because the search of the apartment was consented to by his mother. Third, they argue that even assuming the search violated Headley's Fourth Amendment rights, the admission of the gun into evidence was harmless error.

■ The deliberate bypass rule represents an attempt by the federal courts to reconcile the importance of vindicating constitutional rights with the need to maintain the integrity of orderly state procedures. It holds that when a state defendant deliberately fails to raise a constitutional issue at a point in the state proceedings where state law requires that it be raised or waived, and

the state requirement serves a legitimate state interest, the federal courts will then refuse to consider the issue on a petition for habeas corpus. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Here the petitioners were required by New York law to raise the *Mapp* issue on direct appeal in order to have it adjudicated by the state courts. The judgment of conviction was entered December 12, 1960; the Supreme Court decided Mapp v. Ohio, *supra* on June 19, 1961; and petitioners' conviction was affirmed by the Appellate Division on February 1, 1962. In the meantime, on November 30, 1961, the New York Court of Appeals held that the *Mapp* rule would be applied to cases pending on appeal when the decision in *Mapp* was rendered. People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (1961). The petitioners nonetheless failed to raise the issue on their appeal, but Sams later attempted to raise it in a *coram nobis* petition. He was prevented from doing so by the long-standing rule in New York against allowing *coram nobis* to be used as a substitute for appeal. People v. Sams, 39 Misc.2d 345, 240 N.Y.S.2d 787 (Sup.Ct.1963), aff'd 20 A.D.2d 683, 246 N.Y.S.2d 383 (1st Dept. 1964).

The New York rule seems clearly calculated to serve a legitimate state interest. Its rationale has been explained by the Court of Appeals as follows:

"It would introduce confusion in the administration of justice if defenses or objections which might have been made and reviewed on appeal could be reserved as grounds for collateral attack upon the judgment of conviction years after it was rendered." People v. Howard, 12 N.Y.2d 65, 68, 236 N.Y.S.2d 39, 43, 187 N.E.2d 113, 116, (1962).

Indeed, a similar rule in Maine was recognized as serving a legitimate state interest in Murch v. Mottram, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), and a nearly identical rule is currently in force in this Circuit. Schawartzberg v. United States, 379 F.2d 551 (2d Cir. 1967).

However, the inquiry does not end there, for the key question in applying the deliberate bypass rule is whether in a particular case the failure to raise the constitutional issue was deliberate. In setting out standards for deciding this question the Supreme Court has emphasized that the choice must be deliberate on the part of the petitioner, as well as on the part of his counsel.

"At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. A choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, *supra*, 372 U.S. at 439, 83 S.Ct. at 849 (1963) (citations omitted).

However, under certain circumstances a decision taken in the midst of trial as part of counsel's trial strategy may bind his client. Henry v. Mississippi, *supra*. In Fay v. Noia, *supra*, the Supreme Court found no deliberate choice in petitioner's failure to appeal from a conviction which was based solely on an illegally coerced confession. In Henry v. Mississippi, *supra*, the claimed bypass consisted of counsel's failure to object to admission of evidence resulting from an allegedly illegal search despite his awareness of the state's procedural rule requiring contemporaneous objections in order to preserve a point on appeal. The Supreme Court held that if counsel's failure to object was a deliberate part of his trial strategy, this choice would be binding on the petitioner, and remanded for a hearing on that question.[9]

9. This case was before the Court on direct appeal rather than habeas corpus, but the Court applied the same general standards to the question of deliberate bypass of state procedures as it had in Fay v. Noia, *infra*.

In deciding more recent cases involving the question of deliberate bypass, the Second Circuit has noted a significant distinction between the circumstances of Fay v. Noia, *supra,* and those of Henry v. Mississippi, *supra.* Judge Moore has analyzed the difference as follows:

"[In] reading *Fay* and *Henry,* recognition must be given to the fact that they cover situations along quite distinct lines. Along the *Fay* line are decisions whether to plead guilty, to appeal, and the like. Along the *Henry* line are the decisions . . . dealing with courtroom tactics and matters which only trial counsel would be equipped to pass on in the exercise of judgment under the circumstances presented by the then exigencies of the trial. Of necessity trial strategy must be entrusted to counsel familiar with the courtroom scene and whose decisions must be made in quick reaction as situations, usually unexpected, may arise. The *Fay* type of decision is apt to be made in the less pressurized atmosphere during conferences between defendant and counsel and related to more fundamental questions." United States ex rel. Bruno v. Herold, 408 F.2d 125, 129 (2d Cir. 1969), cert. denied, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970).

■ Headley's failure to raise the *Mapp* issue on appeal bears close resemblance to Noia's failure to appeal from his conviction. Even were it assumed that Headley's counsel intentionally omitted the point from his brief, Headley's understanding acquiescence in this decision would be required before a deliberate bypass could be found. There is no showing in the record before me that the omission was deliberate on the part of counsel, much less on Headley's part, and I must therefore conclude for purposes of this opinion that it was inadvertent.[10]

■ On its merits, however, the *Mapp* claim must be dismissed as legally insufficient. It is firmly established that in order to warrant relief or even an evidentiary hearing a habeas corpus petition must allege sufficient facts to make out a constitutional claim. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Pasley v. Overholser, 108 U.S.App.D.C. 332, 282 F.2d 494 (1960); United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir. 1969), vacated on other grounds, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); United States ex rel. Rosen v. Follette, 409 F.2d 1042 (2d Cir. 1969), cert. denied, 398 U.S. 930, 90 S.Ct. 1822, 26 L. Ed.2d 93 (1970); United States ex rel. Holes v. Mancusi, 423 F.2d 1137 (2d Cir. 1970). Mere conclusory allegations will not suffice. Pasley v. Overholser, *supra*; United States ex rel. Ross v. McMann, *supra.* In fact, the Second Circuit has suggested that supporting materials such as exhibits and affidavits of persons 'with knowledge of the facts, "should be appended, with the petitioner's own affidavit, to the original petition filed with the district court." United States ex rel. Ross v. McMann, *supra,* 409 F.2d at 1022 n. 3, in order to assist the district court in deciding whether to hold a hearing.

■ The amended petition contains only the following conclusory allegations regarding petitioners' *Mapp* claim:

"D. Petitioners SAMS and HUNTLEY were denied due process and prejudiced under the Charge of the Court by the admission into evidence on a joint trial, as the only weapon in evidence, a revolver and holster seized on March 8, 1959 from the apartment where Petitioner HEADLEY lived with his parents during a warrantless general search without consent at a time when Petitioner HEADLEY had

10. It is not necessary to decide whether respondent alleges sufficient facts to merit a hearing on the question of deliberate bypass, in view of the lack of merit in petitioner's claim as presently pleaded.

been held in custody since March 3, 1959 on a sham charge while investigation of the robbery charge proceeded, which evidence was inadmissible as to Petitioners HUNTLEY and SAMS and deprived them of their constitutional right of confrontation. (citations omitted).

"E. Petitioners were denied due process and prejudiced on a joint trial by the admission into evidence of a weapon of co-defendant HEADLEY, which was obtained by the police as a result of cooperation with the informing witness, a known drug addict, who placed the weapon for the police to find, and unlawful general search and seizure without a warrant or consent. (citations omitted)."

The trial transcript adds little to these bare allegations, showing only that the officers walked up to the third story apartment, knocked on the door and went through the apartment, and that Headley's mother was there at the time. Nowhere in the petition or the record are there any factual assertions regarding the key question of consent to the search.[11] Nor is any explanation offered for Headley's failure to append an affidavit from his mother describing the circumstances of the search. See United States ex rel. Holes v. Mancusi, *supra.* In this regard it should be noted that petitioner was represented by counsel at the time the amended petition was drafted and filed, so that the rationale normally used to justify a lenient attitude toward habeas corpus petitions is absent here. Under these circumstances the *Mapp* claim must be dismissed.

## Bruton Claim

Petitioners Headley and Sams contend that the admission of Huntley's confession, even as redacted, violated their right of confrontation under the standards established in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20

L.Ed.2d 476 (1968). In *Bruton,* the admission into evidence of co-defendant Evans' confession implicating Bruton in the crime charged was held to abridge Bruton's right to cross-examination since Evans did not take the stand. The government conceded that the evidence against Bruton, other than his co-defendant's confession was not strong, and the Supreme Court reversed his conviction "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt." 391 U.S. at 126, 88 S.Ct. at 1622.

Evans' confession was admitted in unredacted form, thus increasing the risk that the jury would rely on it in determining Bruton's guilt. Subsequent cases raising the *Bruton* issue have usually involved partially or fully redacted confessions, and the court's task of weighing the risk of reliance by the jury has become correspondingly more refined. Where a partially redacted confession in a case of rape and murder did not sufficiently minimize reference to the co-defendant but rather placed him next to the victim the moment before her death and omitted only the part about his striking the final blow, a *Bruton* violation was found. United States ex rel. LaBelle v. Mancusi, 404 F.2d 690 (2d Cir. 1968). However, where it was obvious that the words "another person" in the confession referred to the co-defendant, the receipt of the confession was held to be erroneous, but the abundance of other evidence against the co-defendant rendered the error harmless. Wapnick v. United States, 406 F.2d 741 (2d Cir. 1969); see also United States v. Levinson, 405 F.2d 971 (6th Cir. 1968), cert. denied 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969). Where the number of people mentioned in the redacted confession is greater than

---

11. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); United States

ex rel. Combs v. LaVallee, 417 F.2d 523 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1150, 25 L.Ed.2d 413 (1970).

the number of defendants on trial, the likelihood of prejudice to a particular co-defendant has been found to be reduced. Slawek v. United States, 413 F.2d 957 (8th Cir. 1969); see also Posey v. United States, 416 F.2d 545 (5th Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127 (1970).

■ Measured against the standards developed in Bruton v. United States, *supra*, and its progeny, the claim that Headley and Sams were deprived of their right of confrontation by the admission of Huntley's redacted confession is not a compelling one. Huntley's confession referred to four cohorts, A, B, C and D, without giving physical descriptions of any of them, so that there was no way from the confession alone for the jury to infer which of the four, if any, Headley and Sams might be. It is true that by comparing the confession with the testimony of Dolores Kelly regarding the meeting in Headley's apartment, the jury might have concluded that Headley was the person referred to as A. However, the judge's instructions to consider the confession only against Huntley coupled with the other evidence against Headley and Sams makes it unlikely beyond a reasonable doubt that the jury relied on the confession to convict them. It must be remembered that Headley and Sams were identified as the robbers by two eye witness victims whose testimony corroborated each other in many respects. Little more was needed for conviction. The *Bruton* claim must therefore be dismissed.

*Voluntariness of Huntley's Confession*

Huntley contends that the admission of his involuntary confession violated his Fourteenth Amendment right to due process of law. In accordance with the procedure then in effect in New York, his confession was submitted to the jury along with the evidence on voluntariness, and the jury was instructed not to consider the confession before first concluding beyond a reasonable doubt that it was voluntary. Four years later, this procedure was held to violate due process because of its failure to afford defendants a separate determination of the question of voluntariness. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Huntley claims that Jackson v. Denno, *supra*, required that he be given a new trial, but in fact the Supreme Court expressly determined that defendants whose convictions were affected by the decision in that case were not automatically entitled to a new trial. 378 U.S. at 394, 84 S.Ct. 1774. Instead, the Court ruled that a separate state hearing on the issue of voluntariness was all that was required, unless the state judge should find, as a result of such a hearing, that the confession was involuntary. In Huntley's case, a four day hearing on the voluntariness of his confession was held in 1965, in accordance with the procedures laid down in Jackson v. Denno, *supra*, and People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) and the judge determined that it was voluntary beyond a reasonable doubt. People v. Huntley, 46 Misc.2d 209, 259 N.Y.S.2d 369 (Sup.Ct.1965).

■ On a petition for habeas corpus, however, the district court may not simply accept the findings of the state court, but must independently review those parts of the record which bear on the constitutional questions raised. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). If the factual hearing in the state court was in any way inadequate or if the state judge's determination was not on the merits or was not supported by the record, the district court must hold a factual hearing. 28 U.S.C. §§ 2243, 2254; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In addition, and perhaps more important, the district court must ascertain whether the state court applied correct constitutional standards to the facts. Townsend v. Sain, *supra*; Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

In this case the record of the Huntley hearing, when read with the relevant portions of the trial transcript, reveals that all pertinent factual questions were thoroughly explored and that the state court's decision was amply supported by the record. It appears, moreover, that correct constitutional standards were applied.

Briefly, the facts were as follows. At about 8 or 9 a. m. on Sunday, March 8, 1959, Detectives Lydon and Dennehy of the Twenty-Fifth Precinct of the New York City Police Department, acting on information gathered from Dolores Kelly, but without a warrant, went to the apartment where Huntley and his girl friend Eleanor (Tiny) Gordon, boarded. Having been let in by Gordon, who was dressed in nightclothes, they searched Huntley's room for about half an hour and then handcuffed Huntley and took him and Gordon, who had since dressed, to the station house, arriving about 9:30 a. m. There they left the two sitting together in a large room on the second floor for a few minutes, but then took them to separate rooms where Huntley was questioned by Dennehy and Lydon, and Gordon by Patrolman Williams.

Huntley was not told of his right to counsel or his right to remain silent. He was asked whether he knew Headley and whether he considered him a friend, and when he replied affirmatively to both questions, Dennehy said that he was glad Headley was not a friend of his. Huntley then asked what all this was about and was asked in return, didn't he know, to which he responded that he knew it was "a heavy one". Dennehy told him that the detectives knew what it was all about, but wanted to hear from him what he knew. Huntley told them that "Tiny" had been sick and that he wanted to keep her out of this; they assured him that if she was not involved she had nothing to worry about. He then gave them a confession lasting over an hour, after which, starting about 11 a. m., Dennehy had him go over it again while he wrote it down. Gordon was allowed to see Huntley before she left around noon, and she testified that at that time he was crying and that he told her he felt badly about what had happened. Later that afternoon, Huntley gave the confession once more before Lieutenant Mahon of the Thirtieth Precinct who had come to take the defendants to his precinct because the crime had been committed there. Huntley was arraigned the next day.

■ Huntley testified that he was beaten and threatened into confessing and that he thrice asked to be allowed to call a lawyer but was refused. This testimony was corroborated somewhat by Sams, but was flatly contradicted by several other witnesses and was rejected by the state judge. The credibility of witnesses was for him to determine, and since his findings are fully supported by the record and there was no serious flaw in the fact-finding process, I see no reason to hold another hearing.

Huntley claims that the failure to tell him of his right to a lawyer or his right to remain silent rendered his confession involuntary under the constitutional standards applicable at the time. He argues that although the decisions of the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) are not retroactive, (Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)) the principles they expounded were implicit to some extent in earlier cases addressed to the voluntariness of confessions. In support of this argument he cites the following passage from Johnson v. New Jersey, *supra*:

"Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See Reck v. Pate, 367 U.S. 433 [, 81 S.Ct. 1541, 6 L.Ed. 2d 948] (1961). That test now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow

him access to outside assistance. See Haynes v. Washington, 373 U.S. 503 [, 83 S.Ct. 1336, 10 L.Ed.2d 513] (1963), Spano v. New York, 360 U.S. 315, [79 S.Ct. 1202, 3 L.Ed.2d 1265] (1959). Prisoners are also entitled to present evidence anew on this aspect of the voluntariness of their confessions if a full and fair hearing has not already been afforded them. See Townsend v. Sain, 372 U.S. 293 [, 83 S.Ct. 745, 9 L.Ed.2d 770] (1963). Thus while *Escobedo* and *Miranda* provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim." 384 U.S. at 730, 86 S.Ct. at 1779.

■ Huntley argues that the trial judge violated this test of voluntariness when he instructed the jury that Huntley was not legally entitled to be informed by the police of his right against self-incrimination. This argument misses the point, however, since the issue on this habeas corpus proceeding is not how the jury arrived at its conclusion that the confession was voluntary but rather how the judge arrived at his conclusion after the Huntley hearing five years later. The failure of the police to warn Huntley of his rights was brought out repeatedly at the hearing, and there is nothing in the record before this court to suggest that the judge did not take it into account in making his findings. His charge to the jury in no way negates the relevance of such a failure as one factor to be considered in determining voluntariness.

■ But Huntley argues that the failure to warn him of him rights in itself is enough to invalidate his confession. This was not the law at the time he was convicted. Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). Under the constitutional stand-

ards applicable to his case, a failure to warn a defendant of his rights was only one factor to be considered in deciding on the voluntariness of a confession. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Spano v. New York, *supra*; Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). Other factors included the length of detention incommunicado, Haynes v. Washington, *supra,* the age of the defendant, Haley v. Ohio, *supra,* his mental ability, Reck v. Pate, *supra,* and whether the defendant was threatened, Payne v. Arkansas, *supra,* or cajoled, Spano v. New York, *supra,* into confessing. Thus, in viewing the failure of the police to warn Huntley of his rights as only one factor in his determination, the state judge applied an entirely correct constitutional standard to the question of whether Huntley's confession was voluntary. With regard to this issue the petition is denied.

*Voluntariness of Sams' Admissions*

■ Sams also contends that his conviction was unconstitutional because based on involuntary admissions. A Huntley hearing on this issue was held in the state court in February 1968, and resulted in a three page unreported opinion holding the admissions voluntary, which was affirmed by the Appellate Division. People v. Sams, 40 A.D.2d 955, 338 N.Y.S.2d 382 (App.Div. 1st Dept. 1972). Sams' arguments on this habeas corpus proceeding are the same as his arguments to the state judge following the Huntley hearing; he has in fact simply resubmitted the same brief. At that time the state judge disposed of his arguments as follows:

"Sams' counsel argues that the police procedures surrounding the eliciting of these admissions as part of a 1959 arrest, such as the failure to obtain a warrant, failure to warn him of his right to remain silent, interrogation without taking him before a mag-

istrate, detention before arraignment, combined to produce a coercive effect. It will be noted, of course, that this preceded by a number of years Miranda v. Arizona (384 U.S. 436 [86 S. Ct. 1602, 16 L.Ed.2d 694]), whose standards with respect to cautionary warnings to a suspect are not to be retroactively applied except as part of an involuntariness claim (Johnson v. New Jersey, 384 U.S. 719, 730 [86 S. Ct. 1772, 16 L.Ed.2d 882]). The court has taken into consideration all of these factors but finds Sams' admissions were made voluntarily beyond any reasonable doubt. The first admission, which was later repeated, was made practically in the course of an ordinary conversation in a car. There was no prolonged detention and no unnecessary delay in arraignment. The police were engaged in the investigation of an unsolved crime and, on the basis of information which came to their attention through a girl friend of Headley, were authorized to conduct a proper interrogation as an essential tool in effective law enforcement.

"The court accordingly finds and decides that the admissions made by Sams and introduced at his trial in 1960 were voluntary beyond a reasonable doubt."

As the state judge noted elsewhere in his opinion, Sams' claim of involuntariness is even weaker than Huntley's because his failure to testify at his own Huntley hearing left the testimony of the police regarding his admissions completely uncontradicted.

Having reviewed the entire record of the state proceedings held on Sams' claim, I find that he was accorded a full and fair hearing on all relevant factual issues and that the state judge applied the proper constitutional standards to the facts. This claim is therefore dismissed.

For all of the reasons stated above, the consolidated petitions for habeas corpus are denied.

So ordered.